No. 25-2129

UNITED STATES COURT OF APPEALS
SEVENTH CIRCUIT

BRIAN PFALZGRAF,
*Plaintiff-Appellee,*

v.

RUSK COUNTY, ET AL.,
*Defendants-Appellants.*

Appeal from the United States District Court for the
Western District of Wisconsin
No. 3:23-cv-877— **Hon. James D. Peterson**, *Chief Judge.*

**PLAINTIFF-APPELLEE'S RESPONSE BRIEF**

John H. Bradley
  *Counsel of Record*
R. Rick Resch
Jacob M. Stroup
STRANG BRADLEY, LLC
613 Williamson St., Ste. 204
Madison, WI 53703
(608) 535-1550
John@StrangBradley.com
Rick@StrangBradley.com
Jacob@StrangBradley.com

*Counsel for Plaintiff-Appellee Brian Pfalzgraf*

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>25-2129</u>

Short Caption: <u>Brian Pfalzgraf v. Rusk County, Wisconsin, et al.</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Brian Pfalzgraf

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Strang Bradley, LLC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: <u>/s/ John H. Bradley</u>    Date: <u>7/9/2025</u>

Attorney's Printed Name: <u>John H. Bradley</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ✔    No ☐

Address: <u>613 Williamson Street, Suite 204</u>

    <u>Madison, WI 53703</u>

Phone Number: <u>608-535-1550</u>    Fax Number: <u>608-406-2602</u>

E-Mail Address: <u>John@StrangBradley.com</u>

rev. 12/19 AK

ii

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>25-2129</u>

Short Caption: <u>Brian Pfalzgraf v. Rusk County, Wisconsin, et al.</u>

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

<table>
<tr><td>☐</td><td>**PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**</td></tr>
</table>

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

<u>Brian Pfalzgraf</u>

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

<u>Strang Bradley, LLC</u>

(3)     If the party, amicus or intervenor is a corporation:

    i)     Identify all its parent corporations, if any; and

        <u>N/A</u>

    ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        <u>N/A</u>

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

<u>N/A</u>

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    <u>N/A</u>

---

Attorney's Signature: <u>/s/ R. Rick Resch</u>          Date: <u>7/9/2025</u>

Attorney's Printed Name: <u>R. Rick Resch</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes ☐     No ☑

Address: <u>613 Williamson Street, Suite 204</u>

    <u>Madison, WI 53703</u>

Phone Number: <u>608-535-1550</u>          Fax Number: <u>608-406-2602</u>

E-Mail Address: <u>Rick@StrangBradley.com</u>

rev. 12/19 AK

Save As          Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-2129

Short Caption: Brian Pfalzgraf v. Rusk County, Wisconsin, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

 Brian Pfalzgraf

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

 Strang Bradley, LLC

(3)     If the party, amicus or intervenor is a corporation:

 i)     Identify all its parent corporations, if any; and

 N/A

 ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

 N/A

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

 N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

 N/A

Attorney's Signature: /s/ Jacob M. Stroup          Date: 9/29/2025

Attorney's Printed Name: Jacob M. Stroup

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes ☐     No ☑

Address: 613 Williamson Street, Suite 204

 Madison, WI 53703

Phone Number: 608-535-1550          Fax Number: 608-406-2602

E-Mail Address: Jacob@StrangBradley.com

rev. 12/19 AK

iv

# TABLE OF CONTENTS

Table of Authorities .................................................................................. vii

Jurisdictional Statement ...............................................................................1

Statement of Issues ......................................................................................1

Introduction .................................................................................................1

Statement of the Case ..................................................................................5

    I.      Nature of the Case ........................................................................5

          A.  Pfalzgraf goes into town for cigarettes .............................................5

          B.  Reisner pulls Pfalzgraf over for a snow-covered license plate......................6

          C.  Reisner Unreasonably Prolongs the Stop .........................................7

    II.     Course of Proceedings and Disposition Below.....................................9

Summary of Argument ...............................................................................10

    I.      Waiver ..........................................................................................11

    II.     Unreasonably Prolonged Traffic Stop ................................................14

    III.    Unreasonable Frisk .......................................................................15

    IV.    Qualified Immunity .......................................................................15

Standard of Review ...................................................................................16

Argument ...................................................................................................16

    I.      Reisner has waived the argument that genuine issues of material fact defeat summary judgment by failing to argue it below ..............................16

    II.     The District Court correctly granted summary judgment on the unlawful extension claim because the mission of the stop was completed as a matter of law after the snow covering Pfalzgraf's license plate was addressed......................................................................21

          A.  There is no genuine issue of material fact regarding the scope of the traffic stop's mission......................................................................23

  B. There is no genuine issue of material fact as to whether
    Reisner had reasonable suspicion to extend the traffic stop.........................26

 III. The District Court correctly granted summary judgment on the
    unlawful frisk claim because Reisner provided no articulable
    facts specific to Pfalzgraf to indicate reasonable suspicion that
    Pfalzgraf was armed and dangerous ......................................................................32

 IV. The District Court correctly determined as a matter of law that
    Reisner is not entitled to qualified immunity .......................................................39

Conclusion..........................................................................................................................42

Certificate of Compliance with Cir. R. 32(c)...................................................................43

Certificate of Service ........................................................................................................44

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. Gant,*
  556 U.S. 332 (2009) ..................................................................32
*Arizona v. Johnson,*
  555 U.S. 323 (2009) ..................................................................32
*Bell v. Irwin,*
  321 F.3d 637 (7th Cir. 2003) ........................................ 4, 24, 27, 33
*Best v. District of Columbia,*
  291 U.S. 411 (1934) ..................................................................27
*Caisse Nationale de Credit Agricole v. CBI Indus., Inc.,*
  90 F.3d 1264 (7th Cir. 1996) .....................................................17
*Cook, Inc. v. Boston Scientific Corp.,*
  333 F.3d 737 (7th Cir. 2003) .....................................................20
*Doornbos v. City of Chicago,*
  868 F.3d 572 (7th Cir. 2017) ....................................... 32, 36, 38
*Fednav Int'l Ltd. v. Continental Ins. Co.,*
  624 F.3d 834 (7th Cir. 2010) ............................................. 16, 21
*Foster v. PNC Bank, Nat'l Ass'n,*
  52 F.4th 315 (7th Cir. 2022) ......................................................16
*Graham v. Connor,*
  490 U.S. 386 (1989) ..................................................................27
*Gupta v. Melloh,*
  19 F.4th 990 (7th Cir. 2021) ......................................................39
*Hicks v. Midwest Transit, Inc.,*
  500 F.3d 647 (7th Cir. 2007) .....................................................17
*Illinois v. Caballes,*
  543 U.S. 405 (2005) ..................................................................22
*Illinois v. Wardlow,*
  528 U.S. 119 (2000) ..................................................................30
*Ins. of Wausau v. Bodi-Wachs Aviation Ins. Agency,*
  846 F. Supp. 677 (N.D. Ill. 1994) .............................................17
*Int'l Travelers Cheque Co. v. BankAmerica Corp.,*
  660 F.2d 215 (7th Cir. 1981) .....................................................17
*Jones v. Clark,*
  630 F.3d 677 (7th Cir. 2011) .....................................................38
*Karnes v. Skrutski,*
  62 F.3d 485 (3rd Cir. 1995) .......................................................38
*Llaguno v. Mingey,*
  763 F.2d 1560 (7th Cir. 1985) ...................................................27
*Manor Healthcare Corp. v. Guzzo,*
  894 F.2d 919 (7th Cir. 1990) .....................................................17
*Martin v. Forest County,*
  677 F. Supp. 3d 853 (E.D. Wis. 2023) ......................................35
*Maryland v. Buie,*
  494 U.S. 325 (1990) ..................................................................32

*McNeil v. Springfield Park Dist.*,
   851 F.2d 937 (7th Cir. 1988) ............................................................20
*Miller v. LeSea Broad., Inc.*,
   87 F.3d 224 (7th Cir. 1996) ...............................................................20
*Mitchell v. Forsyth*,
   472 U.S. 511 (1985) ...................................................................... 14, 39
*Naeem v. McKesson Drug Co.*,
   444 F.3d 593 (7th Cir. 2006) ............................................................17
*Ornelas v. United States*,
   517 U.S. 690 (1996) ...................................................................... 27, 33
*Purtell v. Mason*,
   527 F.3d 615 (7th Cir. 2008) ..................................................... 4, 15, 39
*Rodriguez v. United States*,
   575 U.S. 348 (2015) ................................................................... Passim
*Rosario v. City of Chicago*, No. 11 C,
   456, 2012 WL 1319806 (N.D. Ill. Apr. 17, 2012).............................40
*Ryan v. Chromalloy Am. Corp.*,
   877 F.2d 598 (7th Cir. 1989) .................................................. 11, 20, 21
*Savory v. Cannon*,
   No. 23-cv-1184, 2024 WL 4786167. (C.D. Ill. Oct. 3, 2024) ...........40
*Schwabenbauer v. Bd. of Ed. of City Sch. Dist. of City of Olean*,
   667 F.2d 305 (2d Cir. 1981) .............................................................20
*Scott v. Harris*,
   550 U.S. 372 (2007) ............................................... 14, 27, 34, 39, 41
*Sinn v. Lemmon*,
   911 F.3d 412 (7th Cir. 2018) ............................................................19
*Smith v. Finkley*,
   10 F.4th 725 (7th Cir. 2021) ...................................................... 14, 16
*State v. Hogan*,
   2015 WI 76, 364 Wis. 2d 167, 868 N.W.2d 124 ..............................28
*State v. Kyles*,
   2004 WI 15, 269 Wis. 2d 1, 675 N.W.2d 449...................................34
*Sullivan v. Lemoncello*,
   36 F.3d 676 (7th Cir. 1994) ..............................................................17
*Terry v. Ohio*,
   392 U.S. 1 (1968) ...................................................... 3, 15, 32, 35
*United States v. Arvizu*,
   534 U.S. 266 (2002) ..........................................................................22
*United States v. Bastardo-Villanueva*,
   206 F. Supp. 3d 1181 (M.D. La. 2016) ............................................25
*United States v. Beck*,
   140 F.3d 1129 (8th Cir. 1998) ..........................................................38
*United States v. Bohman*,
   683 F.3d 861 (7th Cir. 2012) ............................................................31
*United States v. Bowman*,
   884 F.3d 200 (4th Cir. 2018) ............................................................38
*United States v. Brewer*,
   561 F.3d 676 (7th Cir. 2009) ...................................................... 30, 31

*United States v. Broomfield,*
417 F.3d 654 (7th Cir. 2005) ....................................................................31

*United States v. Bullock,*
632 F.3d 1004 (7th Cir. 2011) ..................................................................29

*United States v. Chang,*
999 F.3d 1059 (7th Cir. 2021) ..................................................................29

*United States v. Colbert,*
54 F.4th 521 (7th Cir. 2022) ....................................................................35

*United States v. Cole,*
21 F.4th 421 (7th Cir. 2021) .............................................................. 22, 30

*United States v. Dixon,*
137 F.4th 592 (7th Cir. 2025) ........................................................... 27, 33

*United States v. Drayton,*
536 U.S. 194 (2002) ..................................................................................30

*United States v. Johnson,*
383 F.3d 538 (7th Cir. 2004) ...................................................... 14, 16, 26

*United States v. Lee,*
No. 07-CR-167, 2008 WL 150597 (E.D. Wis. 2008) ................................36

*United States v. Leo,*
792 F.3d 742 (7th Cir. 2015) ....................................................................35

*United States v. Lopez,*
907 F.3d 472 (7th Cir. 2018) ....................................................................26

*United States v. Marin,*
761 F.2d 426 (7th Cir. 1985) ....................................................................34

*United States v. Mathes,*
No. 2:20-cr-154-lpr, 2021 WL 4783303 (E.D. Ark. Oct. 13, 2021) ............25

*United States v. Patterson,*
340 F.3d 368 (6th Cir. 2003) ....................................................................38

*United States v. Rodriguez-Escalera,*
884 F.3d 661 (7th Cir. 2018) .......................................................... 21, 22, 36

*United States v. Seals,*
813 F.3d 1038 (7th Cir. 2016) ..................................................................16

*United States v. Tinnie,*
629 F.3d 749 (7th Cir. 2011) ....................................................................37

*United States v. Walton,*
255 F.3d 437 (7th Cir. 2001) ....................................................................16

*United States v. Williams,*
731 F.3d 678 (7th Cir. 2013) .......................................................... 33, 36, 37

*United States v. Wood,*
106 F.3d 942 (10th Cir. 1997) ..................................................................38

*United States v. Yang,*
39 F.4th 893 (7th Cir. 2022) ....................................................................26

*United States v. Yousif,*
308 F.3d 820 (8th Cir. 2002) ....................................................................24

*Wheeler v. Hronopoulos,*
891 F.3d 1072 (7th Cir. 2018) ..................................................................11

*Ybarra v. Illinois,*
444 U.S. 85 (1979) .......................................................................... 29, 31, 36

Statutes

Wis. Stat. § 341.15(2), (3)(c) .................................................................................6
Wis. Stat. § 895.46 ...............................................................................................5

Rules

Fed. R. Civ. P. 15(a)(2) .........................................................................................9
Fed. R. Civ. P. 56(a) ........................................................................................ 16, 18
Fed. R. Civ. P. 56(c) .............................................................................................20

Other Authorities

4 W. LaFave, Search and Seizure § 9.3(d), p. 543 (6th ed. 2020) ................................................25

# JURISDICTIONAL STATEMENT

Defendants-Appellants' jurisdictional statement is true and correct.

## STATEMENT OF ISSUES

1. Whether Reisner has waived the argument that genuine issues of material fact precluded the District Court from granting Pfalzgraf's motion for summary judgment.

2. If Reisner did not waive the argument, whether the District Court properly determined that no genuine issues of material fact exist as to Reisner's liability for unlawfully extending the traffic stop.

3. If Reisner did not waive the argument, whether the District Court properly determined that no genuine issues of material fact exist as to Reisner's liability for an unlawful frisk.

4. If Reisner did not waive the argument, whether the District Court properly determined that no genuine issues of material fact exist as to Reisner's qualified immunity defense.

## INTRODUCTION

Just after midnight, on a cold night in January in northern Wisconsin, Brian Pfalzgraf drove into town to buy cigarettes. He signaled to turn into a gas station and saw there were multiple cop cars in the parking lot. (It turned out, there was no commotion. The officers were just getting something to eat.) Pfalzgraf decided to turn off his signal and keep driving. A Rusk County deputy, Benjamin Reisner, saw Pfalzgraf abandon his trip to the gas station.

He followed Pfalzgraf as Pfalzgraf maneuvered to go back home. Reisner saw that Pfalzgraf's license plate was covered with snow and pulled him over.

Pfalzgraf was agitated that Reisner had followed him and pulled him over for only a snow-covered license plate. Indeed, pretty early in the traffic stop, Reisner cleared off the snow and gave Pfalzgraf a verbal warning for it. But then Reisner unreasonably prolonged the stop to investigate Pfalzgraf further. He pulled Pfalzgraf out of his truck, repeatedly interrogated Pfalzgraf about where he was driving, and questioned Pfalzgraf about whether he was intoxicated. He also frisked Pfalzgraf, even though (he later admitted) he had no reason to believe Pfalzgraf was armed and did not subjectively believe Pfalzgraf was dangerous.

After the frisk, Reisner ran his K-9 around the truck. He claimed the dog's behavior changed, which would be an indication of the presence of drugs. He searched Pfalzgraf, discovered a baggie of meth, and arrested him.

In the ensuing criminal case in Rusk County, Pfalzgraf moved to suppress, arguing that Reisner unreasonably prolonged the stop. The prosecutor agreed, the motion was granted, and the court dismissed the case.

Pfalzgraf then filed this case. Both parties moved for summary judgment, arguing that the case presented purely legal issues—whether Deputy Reisner acted reasonably. In response to Pfalzgraf's motion, Reisner did not argue that disputed facts existed.[1] The District Court determined as a matter of law that Reisner violated Pfalzgraf's Fourth Amendment rights. Specifically, the District Court concluded that Reisner unreasonably prolonged the traffic stop without reasonable suspicion and unreasonably frisked Pfalzgraf

---

[1] Pfalzgraf argued, in response to Reisner's motion, that he should be entitled to a trial on liability if the Court did not grant summary judgment in his favor.

without reasonable suspicion that Pfalzgraf was armed and dangerous. The case proceeded to a damages trial. A jury awarded Pfalzgraf compensatory and punitive damages.

Now, for the first time on appeal, Reisner argues that genuine issues of material fact exist and the District Court should hold a trial on liability. This Court should reject those arguments.

At the threshold, Reisner's arguments are waived. He argued below, repeatedly and diligently, that there were no material facts in dispute. It made sense at the time. Reisner was also asking the District Court to grant *him* summary judgment. But it was his *sole* argument—he did not raise any alleged factual disputes in response to Pfalzgraf's summary judgment motion. The parties thus agreed there were no material facts in dispute. So, the parties asked the District Court to decide questions of law, and it did so.

And the District Court got those questions right.

First, Reisner unreasonably prolonged the traffic stop. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). Like the prosecuting attorney and judge in the criminal case against Pfalzgraf, the District Court concluded that Reisner never developed reasonable suspicion independent from the snow-covered license plate to extend the stop. Reisner's subjective suspicion was rightly rejected as not amounting to an objectively reasonable suspicion. It is not objectively suspicious to be agitated by a traffic stop. Pfalzgraf's explanation for his travel route was not objectively suspicious. And because Reisner is not a trained drug recognition expert, his observations about Pfalzgraf's eyes and mouth were not sufficient to create objective reasonable suspicion.

Second, Reisner unreasonably frisked Pfalzgraf. *Terry v. Ohio*, 392 U.S. 1 (1968). For the same reasons as above, Reisner did not have objective reasonable suspicion to believe Pfalzgraf was engaged in criminal activity. Moreover, as Reisner candidly admitted in his deposition, Reisner had no reason to believe that Pfalzgraf was armed, and Reisner did not

subjectively believe Pfalzgraf posed a threat to him. His subjective belief that Pfalzgraf might have been intoxicated does not change the result. Finally, again, whether Reisner's subjective beliefs were wrong (i.e., a reasonable officer *would have thought Pfalzgraf was armed and dangerous*) presents a legal question—not a factual dispute for a jury. *See Bell v. Irwin*, 321 F.3d 637, 640 (7th Cir. 2003).

Finally, the District Court correctly declined to grant Reisner qualified immunity. As Pfalzgraf argued below, the case law surrounding traffic stop extensions and frisks is clearly established. Reisner does not take issue with that in this appeal. He is not arguing that the law here is underdeveloped or wouldn't have offered clear guidance to a reasonable deputy. Instead, he argues that a jury could find he's entitled to qualified immunity. But "qualified immunity is a legal question for resolution by the court, not a jury." *Purtell v. Mason*, 527 F.3d 615, 621 (7th Cir. 2008).

It's worth taking a beat to consider the impact of Reisner's qualified immunity argument on appeal. He is not asking for the case to be dismissed. He is not asking for immunity from suit. He is not asking the Court to conclude that the law here isn't clearly established. And he is not pushing the burden back to Pfalzgraf to argue otherwise.

Instead, Reisner is asking this Court to do something it can't do—grant him a jury trial on a pure legal question. This is not a request for qualified immunity at all. It's a paper tiger. There's nothing for this Court to decide. The Court should therefore not review Reisner's Fourth Amendment arguments through a qualified immunity lens. Instead, (if this Court doesn't find the arguments waived), it should conclude—as the District Court did—

that Reisner violated Pfalzgraf's Fourth Amendment rights by unreasonably prolonging a seizure and unreasonably frisking him.

## STATEMENT OF THE CASE

### I.      Nature of the Case

Plaintiff Brian Pfalzgraf filed this Section 1983 action against Defendant Rusk County Sheriff's Deputy Benjamin Reisner, alleging that Reisner[2] violated Pfalzgraf's Fourth Amendment rights during a traffic stop in January 2021 in Rusk County, Wisconsin. Rusk County is named as a party as an indemnitor.[3]

The District Court granted Pfalzgraf partial summary judgment as to liability on two claims: (1) that Reisner unreasonably prolonged the traffic stop and (2) that Reisner unlawfully frisked Pfalzgraf for weapons. R. 32 at 21. The case then proceeded to trial on damages, and the jury awarded Pfalzgraf $500 in compensatory damages and $3,500 in punitive damages. R. 69. The District Court then awarded Pfalzgraf costs and attorney fees. R. 93.

#### A. Pfalzgraf goes into town for cigarettes.

This case started with an attempted cigarette run. In the early morning hours of January 26, 2021, in Rusk County, Wisconsin, Pfalzgraf, driving a white truck, activated his turn signal to enter a gas station to buy cigarettes, but then turned it off and kept driving. R. 15 at 9:7–24. He noticed several police cars parked at the gas station he then chose to avoid. R. 14-1 at 7; R. 15 at 8:14–9:06. Reisner, a Sheriff's deputy for the Rusk County Sheriff's Office, saw the aborted turn as he was driving south behind Pfalzgraf. R. 13, ¶1; R. 15 at 10:2–18, 11:1–6. Pfalzgraf turned off the highway, made several turns, and started driving

---

[2] Throughout this brief, Pfalzgraf refers to Reisner as the opposing party for ease of reading, but this reference also encompasses Defendant-Appellant Rusk County.

[3] *See* WIS. STAT. § 895.46; R. 1.

north, the direction from which he had come. R. 15 at 11:12–17. From this series of maneuvers, Reisner surmised that the driver did not want law enforcement following him. *Id.* at 12:22–13:13.

### B. Reisner pulls Pfalzgraf over for a snow-covered license plate.

After noticing that the truck had snow covering its license plate, Reisner initiated a traffic stop. *Id.* at 14:1–4; *see* WIS. STAT. § 341.15(2), (3)(c). He did not think that Pfalzgraf had committed any other traffic violation. R. 15 at 10:11–14, 12:5–13; 14:5–8.

Reisner was a K-9 officer and had his dog, Boone, with him on patrol. R. 15 at 21:16–22:10. Reisner approached the truck and made contact with Pfalzgraf. R. 19-1 at 5:16–24. Pfalzgraf was irritable yet cooperative—he already had his window rolled down and was holding his driver's license when Reisner approached. R. 15 at 55:25–56:06; R. 19-1 at 5:20–24. Reisner told Pfalzgraf that he had stopped him because his license plate was covered with snow. R. 13, ¶5, 00:10–00:18.

After Pfalzgraf questioned the stop, Reisner further explained that he found Pfalzgraf's driving pattern odd. *Id.* at 00:18–00:40. Reisner did not see any weapons or contraband in Pfalzgraf's truck, did not smell anything suspicious, and did not observe any furtive movements from Pfalzgraf. R. 15 at 20:10–22, 19:25–20:05.

Although Reisner is not a certified drug recognition expert, he thought that Pfalzgraf's pupils were dilated and his mouth was dry, which he thought were consistent with drug use. *Id.* at 30:09–31:02; R. 19-1 at 12:19–13:4. Reisner questioned Pfalzgraf about his path of travel, and Pfalzgraf responded, "Yeah, I didn't want to go that way anymore. Turned around and go back to my house." R. 13, ¶5, 00:40–00:48.

Skeptical of Pfalzgraf's response, Reisner followed up, clarifying that Pfalzgraf was traveling "[f]rom your house to your house?" *Id.* at 00:48–01:14. Pfalzgraf responded, "Yeah. Coming to town to get cigarettes." *Id.* Reisner thought this was odd and took Pfalzgraf's

license and proof of insurance back to his squad car. *Id.* at 01:14–02:49. By this time, another officer had arrived to assist Reisner. R. 13, ¶38.

As Reisner returned to Pfalzgraf's truck from his squad car, he wiped the snow off Pfalzgraf's license plate and informed Pfalzgraf that he had done so. R. 13, ¶5, 02:50–03:12. Reisner never wrote Pfalzgraf a ticket for the snow on the license plate, but instead verbally warned him to keep it clean. R. 19-1 at 10:16–21.

After cleaning off Pfalzgraf's license plate, Reisner requested dispatch to run Pfalzgraf's name, license, and truck. R. 19-1 at 6:19–7:2; R. 13, ¶5, 03:12–03:30.

In response, dispatch told Reisner that Pfalzgraf had no warrants and that his license and registration were in order. R. 19-1 at 6:14–7:9; R. 15 at 34:02–34:15. At this point, the snowy license plate traffic stop was done.

**C. Reisner Unreasonably Prolongs the Stop.**

But Reisner then extended the traffic stop to investigate whether Pfalzgraf was operating while intoxicated. R. 15 at 34:22–35:18; R. 19-1 at 27:20–28:10. He believed that he had reasonable suspicion to extend the stop based on several aspects of Pfalzgraf's behavior and an assertion that Reisner had previously seen Pfalzgraf's truck (but not Pfalzgraf) parked in front of a known drug house at some unknown time in the past (an observation not included in any reports or spoken about on Reisner's bodycam). R. 13, ¶¶30–31; R. 15 at 30:09–31:02, 28:05–29:02, 40:03–11.

Reisner walked back up to Pfalzgraf's driver-side window and asked Pfalzgraf to step out of his truck. R. 13, ¶5, 05:08–05:30. Pfalzgraf got out of the truck and Reisner asked him whether he had a pocketknife or anything, and Pfalzgraf said he didn't. *Id.* at 05:30–05:40. Reisner then told Pfalzgraf, "All right, I'm just going to pat you down for my safety." *Id*. at 05:40–05:45. Although Reisner believed that many people in Rusk County carried weapons, he did not subjectively believe that Pfalzgraf was dangerous, testifying in his

deposition: "There wasn't anything about the current situation that made me fear that Mr. Pfalzgraf was going to present any sort of immediate threat to me." R. 15 at 32:09–11, 32:24–33:02. Reisner then frisked the outside of Pfalzgraf's clothing, which yielded no weapons or contraband. R. 13, ¶5, 05:40–06:15; R. 19-1 at 14:18–15:05.

Reisner then resumed questioning Pfalzgraf, relaying his suspicion that "something is going on here." *Id.* at 06:10–06:30. Pfalzgraf explained his path of travel by stating that he was going to buy cigarettes and saw police cars in the parking lot, then decided to wait until they left. *Id.* at 06:30–06:40. He said that he did not have a problem with police but didn't want to visit them or anything. *Id.* at 06:45–06:54. Reisner then turned the subject of his questioning to drugs, asking Pfalzgraf if there would be any drugs in his blood if it were tested, and Pfalzgraf said no. *Id.* at 07:39–07:50. He further asked Pfalzgraf whether he was taking any prescription drugs, and Pfalzgraf said he was taking antibiotics. *Id.* at 07:50–08:01. Pfalzgraf indicated that he would pass field sobriety tests and denied using drugs. *Id.* at 08:01–08:45. He also denied that there was anything illegal in his truck. *Id.* at 09:30–09:45.

Reisner asked Pfalzgraf for consent to search his truck, which Pfalzgraf provided. *Id.* at 09:45–09:55. Before searching the truck, Reisner decided to walk his K-9, Boone, around the truck. R. 15 at 41:11–42:08. Boone's behavior changed, which Reisner understood to mean that he had detected the scent of contraband. *Id.* at 45:02–46:07. Upon searching the truck, Reisner found nothing of evidentiary value. *Id.* at 49:15–20.

Finally, Reisner decided to search Pfalzgraf's person to, as he explained, "complete a thorough investigation and get a full scope of everything that was available at the time." R. 15 at 53:1–9. He asked Pfalzgraf if he had anything in his pockets. R. 13, ¶5, 27:20–27:25. Pfalzgraf said no, and Reisner ordered him to take his hands out of his pockets. *Id.* at 27:25–27:38. Pfalzgraf took his hands out of his pockets, but his hands were closed, so Reisner asked him to open his hands. *Id.* at 27:38–27:52. Pfalzgraf opened his hands, revealing a

baggie of meth, and Reisner arrested him. R. 19-1 at 19:8–18.[4] A Rusk County judge ultimately dismissed those charges after a Rusk County Assistant District Attorney joined Pfalzgraf's motion to suppress due to an unreasonably prolonged traffic stop. R. 29, ¶¶15–17.

## II.     Course of Proceedings and Disposition Below

Pfalzgraf filed this suit on December 20, 2023, raising claims for an unlawful extension of the traffic stop, an unlawful frisk, and an unlawful search. R. 1. Reisner filed a motion for summary judgment, and Pfalzgraf filed a motion for partial summary judgment as to liability. R. 10; R. 16.

In the cross-briefing for summary judgment, Pfalzgraf suggested there were several disputed (but potentially immaterial) facts in the case. R. 20 at 2–4. In contrast, Reisner was adamant there were no disputed facts whatsoever. R. 26 (brief opposing Pfalzgraf's motion) at 2, 6, 7, 11, 13; R. 23 (brief in support of Reisner's motion) at 1, 2, 4, 8, 10, 11, 12. In responding to Pfalzgraf's proposed findings of fact supporting his motion for partial summary judgment, Reisner took scrupulous care not to suggest that any fact was in dispute. R. 27. Reisner, instead, argued both in his briefing supporting his motion and in his briefing opposing Pfalzgraf's motion, that he was entitled to judgment as a matter of law. R. 11 at 2; R. 23 at 1; R. 2. On Pfalzgraf's motion, neither party argued there were disputed material facts. As Reisner explained in his brief opposing Pfalzgraf's motion: "In this case, the Court benefits from the fact that practically the entire encounter and all three of the challenged searches were recorded on Deputy Reisner's body camera and the material facts prior to the footage are undisputed. . . As a matter of law, the video evidence and other

---

[4] Pfalzgraf initially brought a third claim related to Reisner searching his person after Reisner said the K-9 alerted. R. 1 at 6. The District Court denied both parties' summary judgment motions on this claim, and, with Reisner's written consent, Pfalzgraf dismissed it before trial. R. 32 at 17–20; R. 33 (Joint Notice of Consent to File First Amended Complaint); R. 35; *see* FED. R. CIV. P. 15(a)(2).

undisputed facts demonstrate that the searches did not violate the Fourth Amendment." R. 26 at 2.

Thus, the parties agreed that the case presented only legal issues and requested that the District Court rule on liability. R. 23 (Reisner's reply) at 1; R. 28 (Pfalzgraf's reply) at 1.

On Counts 1 and 2, the District Court obliged that request. It denied Reisner's motion for summary judgment and granted in part and denied in part Pfalzgraf's motion for partial summary judgment. R. 32. Specifically, it concluded that summary judgment as to liability was appropriate on the unlawful extension claim and the unlawful frisk claim, but not on the unlawful search claim. *Id.* at 21.

Pfalzgraf filed an amended complaint dismissing the unlawful search claim. R. 33; R. 34. On June 2, 2025, the case proceeded to a jury trial on damages as to the unlawful extension claim and the unlawful frisk claim. R. 64. The jury returned a verdict for Pfalzgraf, awarding $500 in compensatory damages and $3,500 in punitive damages. R. 69. Judgment was entered on June 5, 2025. R. 73. Reisner filed notice of appeal on July 3, 2025. R. 87. Subsequently, after briefing, the District Court awarded Pfalzgraf costs and attorney fees, summarizing the case: "This was a small case, in the sense that it involved a clear-cut but relatively modest infringement of plaintiff's Fourth Amendment rights that imposed only a modest injury and resulted in a similarly modest damages award." R. 93 at 2; *see* R. 78, R. 88, *and* R. 90 (fee petition briefing).

## SUMMARY OF ARGUMENT

All the arguments Reisner makes on appeal are waived. Even if they are not, the District Court correctly determined that Reisner unreasonably prolonged the traffic stop, that Reisner unreasonably frisked Pfalzgraf, and that Reisner is not entitled to qualified immunity.

## I.    Waiver

This case presents a "hornbook example of how to waive an argument on appeal." *Wheeler v. Hronopoulos*, 891 F.3d 1072, 1072 (7th Cir. 2018). Having insisted below that no facts were disputed, Deputy Reisner cannot now seek a jury to dispute them. And even if the argument was not waived, Reisner is wrong on the merits. The District Court correctly concluded that partial summary judgment was appropriate on both Pfalzgraf's claim that the stop was unreasonably extended and his claim that he was unlawfully frisked. The District Court was also correct to determine, as a matter of law, that Reisner was not entitled to qualified immunity.

Reisner's opening appellate brief is the first time anybody in this case has asked for a jury trial on liability. For the first time on appeal, Reisner asserts that genuine issues of material fact preclude summary judgment on the unlawful extension claim, the unlawful frisk claim, and an assertion of qualified immunity. Each of these arguments is waived. In the District Court, Reisner made no argument that there were genuine issues of material fact precluding a grant of partial summary judgment to Pfalzgraf. Reisner's "failure may well be attributable to the fact that [he] filed a cross-motion for summary judgment, thereby agreeing that no genuine issues of material fact existed." *Ryan v. Chromalloy Am. Corp.*, 877 F.2d 598, 603 (7th Cir. 1989). But the filing of cross motions does not relieve a party from its burden to assert a disputed fact if it thinks one exists. "If it does not do so, and loses the motion, it cannot raise such issues on appeal." *Id.* (quoted source omitted).

Indeed, Reisner argued the complete opposite below. He repeatedly told the District Court that there were *no* genuine issues of material fact and that *he* (and not Pfalzgraf) was entitled to judgment as a matter of law. In his brief opposing Pfalzgraf's motion for partial summary judgment, Reisner used the word "undisputed" nine times:

- "Applying the *undisputed* facts to the well-established law shows that Deputy Reisner had reasonable suspicion to conduct the protective pat down when Plaintiff exited his truck."

- "Likewise, the *undisputed* facts demonstrate that the mission of the stop was not unreasonably extended by conducting the K-9 search."

- "And, lastly, the *undisputed* facts confirm that there was probable cause to search Plaintiff after Boone alerted on the truck."

- "In this case, the Court benefits from the fact that practically the entire encounter and all three of the challenged searches were recorded on Deputy Reisner's body camera and the material facts prior to the footage are *undisputed*."

- "As a matter of law, the video evidence and other *undisputed* facts demonstrate that the searches did not violate the Fourth Amendment."

- "The video evidence and other *undisputed* facts demonstrate that Deputy Reisner did not unlawfully extend the mission of the stop" (capitalization modified).

- "The video evidence and other *undisputed* facts demonstrate that Deputy Reisner was still engaged in the mission of the stop when he deployed his K-9 to sniff the vehicle" (bolding removed).

- "Plaintiff fails to analyze the facts objectively, and objectively the *undisputed* facts demonstrate that based on Deputy Reisner's experience and training, he had reasonable suspicion that Plaintiff was under the influence and in possession of narcotics."

- "On these *undisputed* facts, the Court can conclude as a matter of law that Deputy Reisner has reasonable suspicion to continue to investigate and to utilize Boone to conduct a sniff of the vehicle even if it extended the traffic stop."

R. 26 at 2, 6, 7, 13 (emphasis added to all). As relevant to Counts 1 and 2 (the only ones at issue in this appeal), Reisner used the word "disputed" only once to say there were no disputed facts, while explicitly saying the District Court had only legal questions to decide:

- "Because this determination is a legal conclusion and Plaintiff presents *no disputed issues of fact*, it is unclear as to why Plaintiff believes that there will be a jury trial in this case. Whether these searches violated the Fourth Amendment should be resolved by the Court."

R. 26 at 3, n.3 (emphasis added).

Contrast that to Reisner's stated issues on appeal:

1. Whether *genuine disputes of material fact* precluded Plaintiff's motion for partial summary judgment as to his Fourth Amendment unlawful extension of the stop claim.

2. Whether *genuine disputes of material fact* precluded Plaintiff's motion for partial summary judgment as to his Fourth Amendment frisk claim.

3. Whether *genuine disputes of material fact* precluded the District Court from ruling as a matter of law that Deputy Reisner was not entitled to qualified immunity because did not have at least arguable reasonable suspicion to extend the stop and conduct the frisk.

Opening Br. at 2 (emphasis added). Reisner cannot now raise these arguments for the first time, having failed to do so in the District Court.

## II.  Unreasonably Prolonged Traffic Stop

Even if the argument that genuine issues of material fact exist were not waived (it was), Reisner fails to demonstrate either that the relief he seeks (a jury trial on legal questions) is even available or that the District Court improperly awarded partial summary judgment on any of Pfalzgraf's claims on the merits.

To begin, Reisner faces an initial doctrinal roadblock. In each of his three arguments, Reisner asks this Court to allow a jury to decide a legal, rather than factual, question. He says that issues of fact preclude summary judgment on questions of reasonable suspicion and qualified immunity. The problem is that both reasonable suspicion and qualified immunity present questions of law. *United States v. Johnson*, 383 F.3d 538, 542 (7th Cir. 2004); *Smith v. Finkley*, 10 F.4th 725, 734 (7th Cir. 2021). What Reisner asks is for this Court to allow a jury to look at the same undisputed facts as the District Court yet arrive at a different legal conclusion. This is not a jury's role. The relief Reisner seeks (a jury trial on legal questions) is unavailable.

This point is particularly salient with regard to qualified immunity. If qualified immunity applies, the claim is simply done. "The entitlement is an *immunity from suit* rather than a mere defense to liability[.]" *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). Accordingly, qualified immunity is analyzed in the "light most favorable to the party asserting the injury." *Scott v. Harris*, 550 U.S. 372, 377 (2007). Ignoring this established precedent, Reisner asks this Court to analyze the facts in the light most favorable to *him* and authorize a trial to determine whether he is immune from suit in the first place.

On the merits, Reisner's arguments fare no better. First, the District Court correctly determined that Pfalzgraf was entitled to judgment as a matter of law on the unlawful extension claim. Reisner pulled Pfalzgraf over to address a license plate obscured by snow. R. 15 at 14:5–8. After the snow covering the license plate was rectified, the stop should have

ended. *Rodriguez*, 575 U.S. at 354. Neither Pfalzgraf's path of travel nor his behavior during the traffic stop provided reasonable suspicion to justify an extension of the stop to investigate Pfalzgraf for potential drug activity, and there is no genuine issue of material fact necessitating a trial on the unlawful extension claim.

## III.  Unreasonable Frisk

Second, the District Court correctly awarded partial summary judgment on Pfalzgraf's claim that Reisner unlawfully frisked him despite lacking reasonable suspicion that he was armed and dangerous. *Terry*, 392 U.S. 1.

The District Court did not make any impermissible credibility determinations in awarding summary judgment to Pfalzgraf, but instead correctly recognized that Reisner's "basis" for the search was simply a generalized collection of facts that would apply to anyone rather than any articulable fact specific to Pfalzgraf himself. There are no facts in the record indicating reasonable suspicion that Pfalzgraf was armed *or* dangerous, let alone both. Summary judgment was properly granted on the unlawful frisk claim.

## IV.  Qualified Immunity

Finally, qualified immunity is not properly raised in this appeal. *Purtell*, 527 F.3d at 621. Reisner's qualified immunity argument on appeal is simply derivative of his arguments on reasonable suspicion. He rests on the assertion that the District Court made impermissible credibility determinations (the same "credibility determinations" on which he rests his argument that there are issues of fact with regard to reasonable suspicion). But this does not put qualified immunity at issue. Reisner does not take issue with the District Court's use of the "arguable reasonable suspicion" standard. Rather, he appears to disagree with its legal conclusion based on the undisputed facts that qualified immunity does not protect Reisner's actions. There are no purported factual disputes that would upset the District Court's determination.

## STANDARD OF REVIEW

This case arrives before this Court on an appeal of the District Court's summary judgment decision. A District Court's grant of summary judgment is reviewed de novo. *Foster v. PNC Bank, Nat'l Ass'n*, 52 F.4th 315, 320 (7th Cir. 2022). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; FED. R. CIV. P. 56(a). All justifiable inferences are drawn in favor of the nonmoving party. *Foster*, 52 F.4th at 320.

Likewise, this Court reviews de novo all questions of law, including the existence or absence of reasonable suspicion. *Johnson*, 383 F.3d at 542. Qualified immunity also presents a question of law. *Smith*, 10 F.4th at 734.

## ARGUMENT

### I. REISNER HAS WAIVED THE ARGUMENT THAT GENUINE ISSUES OF MATERIAL FACT DEFEAT SUMMARY JUDGMENT BY FAILING TO ARGUE IT BELOW.

Reisner's case falls apart before it even begins. The claims he makes—that there are genuine issues of material fact precluding summary judgment—were not made in the District Court and are raised for the first time on appeal. Such arguments are waived, and the case should end there.

"Waiver occurs when a [party] intentionally relinquishes or abandons a known right." *United States v. Walton*, 255 F.3d 437, 441 (7th Cir. 2001) (quoted source omitted). As opposed to forfeiture, which is an accidental or negligent omission, waiver represents an intentional choice not to assert a right. *Id.* The consequence of a waiver is severe: the issue cannot be reviewed. *United States v. Seals*, 813 F.3d 1038, 1045 (7th Cir. 2016).

"It is well-settled that a party may not raise an issue for the first time on appeal." *Fednav Int'l Ltd. v. Continental Ins. Co.*, 624 F.3d 834, 841 (7th Cir. 2010). Put simply,

arguments "not raised before the district court are waived on appeal." *Hicks v. Midwest Transit, Inc.*, 500 F.3d 647, 652 (7th Cir. 2007).

On summary judgment, a party's obligations to raise arguments in the District Court are no different. "A party seeking to defeat a motion for summary judgment is required to 'wheel out all its artillery to defeat it.'" *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) (quoting *Empl. Ins. of Wausau v. Bodi-Wachs Aviation Ins. Agency*, 846 F. Supp. 677, 685 (N.D. Ill. 1994)). "Belated factual or legal attacks are viewed with great suspicion…."*Id.*

Any argument here that genuine issues of material fact precluded summary judgment was not made in the District Court and accordingly was waived. *See Sullivan v. Lemoncello*, 36 F.3d 676, 678 (7th Cir. 1994) ("Lemoncello has waived his argument as to the presence of genuine issues of material fact because he did not preserve it for appeal by raising it before the district court."); *Manor Healthcare Corp. v. Guzzo*, 894 F.2d 919, 922 (7th Cir. 1990) (concluding that "any arguments in opposition to summary judgment not properly raised in the district court are waived"). Rather than arguing in the District Court that genuine issues of material fact precluded summary judgment, Reisner instead contended that there were *no* disputed facts and that *he* was entitled to judgment as a matter of law.

The District Court did what Reisner asked it to do: it decided legal questions on undisputed facts. "It is well settled law that a party cannot complain of errors which it has committed, invited, induced the court to make, or to which it consented." *Int'l Travelers Cheque Co. v. BankAmerica Corp.*, 660 F.2d 215, 224 (7th Cir. 1981). If the District Court erred (which it didn't), it was because Reisner invited it to do so. "When error is invited, not even plain error permits reversal." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 609 (7th Cir. 2006).

Reisner took this tack not only with regard to his own summary judgment motion but, critically, also with regard to his response to Pfalzgraf's summary judgment motion. But now before this Court, Reisner does an about-face and asserts that there *are* disputed facts and that there *should* be a trial.

In his response brief opposing Pfalzgraf's motion for summary judgment, Reisner dispositively did not claim that there are any genuine issues of material fact as to the unlawful frisk claim or the unlawful extension claim. Instead, he argued that the facts remained undisputed and that the "Court should deny Plaintiff's motion and grant Deputy Reisner's motion for summary judgment." R. 26 at 2, 19. On the merits, Reisner contended that "Deputy Reisner had reasonable suspicion to conduct a protective pat down of Plaintiff when he exited his vehicle," not that disputed facts necessitated a trial on whether Reisner had reasonable suspicion to conduct a pat down. *Id.* at 3. He further argued that the "video evidence and other *undisputed facts* demonstrate that Deputy Reisner did not unlawfully extend the mission of the stop," not that disputed facts necessitated a trial on the extension of the stop. *Id.* at 6 (emphasis added). To repeat: Reisner's *only* argument in response to Pfalzgraf's motion for summary judgment in the District Court was that he should be granted summary judgment, not that any disputed facts precluded summary judgment to Pfalzgraf.

And unsurprisingly, the entire basis of Reisner's own summary judgment motion was that there were no genuine issues of fact and that the case should be decided as a matter of law. R. 11. After all, that is the doctrinal basis for a summary judgment motion. FED. R. CIV. P. 56(a). The text of his brief bears this out. No fewer than six times in his brief-in-chief

in support of summary judgment did Reisner assert that the facts here are "undisputed."[5] Similar arguments are reflected in Reisner's reply brief in the District Court.[6]

The qualified immunity issue arose from Reisner's own volition, first making an appearance in his summary judgment motion and also being argued in his response to Pfalzgraf's motion for summary judgment. R. 11 at 24; R. 26 at 17. Qualified immunity is an affirmative defense, and once raised, it becomes the plaintiff's burden to defeat it. *Sinn v. Lemmon*, 911 F.3d 412, 418 (7th Cir. 2018).

Such a strategic legal decision is understandable. It would make no sense for Reisner to raise qualified immunity, seek summary judgment on the defense, and then defeat it himself by raising disputed facts. Unsurprisingly, he did not do this in the District Court— he did not argue there were any disputed facts necessitating a trial on qualified immunity.

---

[5] R. 11 at 2 ("Plaintiff's claims fail as a matter of law because based on the undisputed video and documentary evidence, Deputy Reisner had reasonable suspicion to conduct a protective search of Plaintiff."); *id.* at 10 ("The undisputed facts show that Deputy Reisner's various searches of Plaintiff's person and vehicle did not violate the Fourth Amendment."; *id.* at 15 ("Under these undisputed circumstances, Deputy Reisner had reasonable suspicion to conduct a brief (23 second) pat down search…."); *id.* ("The undisputed facts demonstrate that Deputy Reisner did not violate Plaintiff's Fourth Amendment rights by using the K-9 to sniff search the exterior of Plaintiff's vehicle."); *id.* at 15–16 ("The undisputed facts, however, show that Deputy Reisner was still engaged in the mission of the stop itself when the dog sniff occurred…."); *id.* at 27 ("The undisputed facts demonstrate that Deputy Reisner had at least arguable reasonable suspicion to conduct both the initial security pat down and the K-9 sniff.").

[6] R. 23 at 1 ("The undisputed facts and objective video footage of the encounter demonstrate that none of the challenged searches violated Plaintiff's constitutional rights, and even if they did, Deputy Reisner would still be entitled to qualified immunity."); *id.* at 2 ("The undisputed facts show that each of the three searches was constitutionally permissible."); *id.* at 4 ("When considered as a whole, the undisputed facts that existed at the time of the pat down support a legal conclusion that an objectively reasonable officer would have had safety concerns about Plaintiff."); *id.* at 8 ("Plaintiff concedes that the traffic stop was legal but argues that that [sic] the traffic stop was unlawfully extended…. The undisputed facts, however, do not support this conclusion."); *id.* at 10 ("Here, the undisputed facts show that Deputy Reisner had independent reasonable suspicion that a crime had been committed."); *id.* at 11 ("Even if one were to not find Deputy Reisner's report and testimony credible, the body camera footage and Plaintiff's undisputed driving pattern prior to recording demonstrate that there was reasonable suspicion that Plaintiff was under the influence."); *id.* ("It is undisputed that Plaintiff was driving randomly late at night in rural Rusk County and told Deputy Reisner that he was avoiding police officers.").

The mere filing of a cross-motion for summary judgment does not waive the right to a trial. *Cook, Inc. v. Boston Scientific Corp.*, 333 F.3d 737, 742 (7th Cir. 2003) (citing *Miller v. LeSea Broad., Inc.*, 87 F.3d 224, 230 (7th Cir. 1996)). But the filing of a cross-motion also does "not relieve [a party] of their burden as the nonmovants relative to the [other party's] motion for summary judgment." *Ryan*, 877 F.2d at 603.

*Ryan* is particularly instructive here. The Court there further explained that despite filing their own cross motion for summary judgment, "the appellants were required to set forth specific facts showing why summary judgment on behalf of the defendants was not appropriate. FED. R. CIV. P. 56(c)." *Id.* This shortcoming was fatal to the appeal in that case: "In light of their failure to do so, appellants have waived this issue under the long-standing rule that 'a party opposing a summary judgment motion must inform the trial court of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such issues on appeal.'" *Id.* at 603–04 (quoting *McNeil v. Springfield Park Dist.*, 851 F.2d 937, 946 (7th Cir. 1988)).

The appeal here suffers from the same fatal flaw as that in *Ryan*. Nowhere in the briefing in the District Court did Reisner even hint that there may be a disputed material fact as to any claim or defense. At every turn, and crucially in response to Pfalzgraf's summary judgment motion, Reisner contended that a trial was not necessary. Presumably, Reisner made a conscious decision to argue that there were no disputed issues of fact, while eschewing the opposite proposition. By doing so, he knowingly relinquished the right to make arguments that there are disputed issues of fact, and a determination that the arguments are waived is proper. His own summary judgment motion did not "bar [him] from asserting that there are issues of fact sufficient to prevent the entry of judgment as a matter of law against [him]." *Schwabenbauer v. Bd. of Ed. of City Sch. Dist. of City of Olean*, 667 F.2d 305, 313 (2d Cir. 1981). But he did not do this, waiving the argument.

Even though summary judgment was before the District Court generally, the District Court never had a chance to consider Reisner's specific arguments that there are disputed issues of fact that preclude summary judgment. A party "waive[s] the ability to make a specific argument for the first time on appeal when the party failed to present that specific argument to the district court, even though the issue may have been before the district court in more general terms." *Fednav Int'l*, 624 F.3d at 841. The specific issues raised in this appeal were argued for the first time on appeal, so this Court should not consider them.

Reisner cannot now say that there are disputed facts and that a trial must occur on liability after continually and exclusively arguing below that no trial was necessary both in his own summary judgment motion and in response to Pfalzgraf's summary judgment motion. In the words of the *Ryan* Court, Reisner's own cross motion did not relieve him of his burden relative to Pfalzgraf's motion for summary judgment. *Ryan*, 877 F.2d at 603. He did not meet the burden in the District Court to "set forth specific facts showing why summary judgment on behalf of [Pfalzgraf] was not appropriate." *Id.* He cannot do so now for the first time on appeal.

Reisner waived the argument that issues of material fact exist and the Court's analysis should end there.

**II. THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT ON THE UNLAWFUL EXTENSION CLAIM BECAUSE THE MISSION OF THE STOP WAS COMPLETED AS A MATTER OF LAW AFTER THE SNOW COVERING PFALZGRAF'S LICENSE PLATE WAS ADDRESSED.**

Even if the Court determines that Reisner did not waive the argument that issues of fact preclude summary judgment on the unlawful extension claim (he did), Reisner is wrong on the merits.

The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures by the government. *United States v. Rodriguez-Escalera*, 884 F.3d 661, 667 (7th

Cir. 2018). Its protections extend "to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *Id.* (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). To pull a car over, law enforcement must have reasonable suspicion that the particular person is breaking the law. *Id.* at 667–68. But just because a seizure is lawful at its inception does not mean that it cannot later violate the Fourth Amendment if it is "prolonged beyond the time reasonably required to complete that mission." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005).

"[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop [] and attend to related safety concerns." *Rodriguez*, 575 U.S. at 354 (internal citation omitted). Generally, the mission of a traffic stop includes deciding whether to issue a ticket, checking the driver's license, determining whether there are outstanding warrants, and inspecting the registration and proof of insurance. *United States v. Cole*, 21 F.4th 421, 428–29 (7th Cir. 2021). In making ordinary inquiries attendant to a traffic stop, "an officer may ask questions that are unrelated to the stop, and even conduct a dog sniff, if doing so does not prolong the traffic stop." *Id.* at 429. But "[b]ecause addressing the infraction is the purpose of the stop, it may last no longer than is necessary to effectuate that purpose." *Rodriguez*, 575 U.S. at 354 (cleaned up). "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* Extending the stop beyond that time requires reasonable suspicion of criminal activity independently sufficient to justify a seizure. *Rodriguez-Escalera*, 884 F.3d at 668.

Pfalzgraf was pulled over because he had snow covering his license plate. This infraction was resolved quickly when Reisner brushed the snow off the plate as he walked between his squad car and Pfalzgraf's truck early on in their interaction. R. 13, ¶5, 02:50–03:12. At this point, the mission of the stop and its accompanying "ordinary inquiries" were

complete. The snow was brushed off, and Reisner ran Pfalzgraf's information, which came back clean. Nothing else to do except send Pfalzgraf on his way.

### A. There is no genuine issue of material fact regarding the scope of the traffic stop's mission.

Reisner contends that there is a genuine issue of material fact regarding the scope of the stop's mission. Opening Br. at 18–19. In Reisner's view, a reasonable jury could determine that the mission of the stop was not only to address the snow-covered license plate, but also to investigate Pfalzgraf's supposedly "odd and erratic driving pattern." *Id.* Not so.

To begin, there was nothing illegal about Pfalzgraf's supposed "erratic" driving pattern. And it should be noted that the language used to describe Pfalzgraf's driving has somewhat evolved through the course of this case. In the initial incident report, the path of travel was described several times as "odd." R. 13-1 at 3. At deposition, Reisner said simply that Pfalzgraf's driving pattern "[c]aught [his] attention." R. 15 at 12:4. Somewhere along the way, "odd" driving that "caught [Reisner's] attention" has morphed into "erratic" driving, a word not used by Reisner in his report or deposition and a word raising the specter of danger. Nothing about Pfalzgraf's driving was alleged to be "erratic," and the District Court specifically so found. R. 32 at 10. He made a driving maneuver people make every day when they miss a turn or decide to change plans—a series of turns to go back the way they were coming from. So how is investigating this pattern part of the traffic stop's mission? The answer is it cannot be.

Reisner claims that a jury could find that the mission of the stop included more than just the license plate violation. Specifically, he contends that a "reasonable jury could determine that Deputy Reisner's mission included investigating the suspicious driving

pattern and that it was not complete when he asked Plaintiff to step out of his truck." Opening Br. at 19.

This argument is unpersuasive. First, whether a seizure is reasonable is a question of law. "Under the Constitution, the right question is how things appeared to objectively reasonable officers at the time of the events, not how they appear in the courtroom to a cross-section of the civilian community." *Bell*, 321 F.3d at 640.

Second, as a matter of law, there was not reasonable suspicion to detain Pfalzgraf apart from the snow-covered license plate infraction. Pursuant to *Rodriguez*, the mission of a traffic stop is twofold: (1) to address the traffic violation that warranted the stop and (2) to attend to related safety concerns. 575 U.S. at 354. Plainly, the traffic violation that warranted the stop was the snow-covered license plate. Reisner admits as much. At his deposition, he testified,

> Q: If the plate hadn't been obscured, is it fair to say you would not have pulled the car over?
>
> A: Correct.

R. 15 at 14:5–8. Pfalzgraf's route of travel was not a traffic violation. It could not have independently justified a traffic stop. *See United States v. Yousif*, 308 F.3d 820, 829 (8th Cir. 2002) (explaining that "there is nothing inherently unlawful or suspicious about a vehicle…exiting the highway").

And Pfalzgraf's route of travel does not raise any "safety concerns." Viewed objectively, all Pfalzgraf did was make a series of turns to change direction. Reisner admitted that there was nothing about Pfalzgraf's driving that indicated he was impaired:

> Q. Okay. I guess, my question's a little more specific.
>
> And what I mean is did you see anything about the driving ability of the driver that looked like, oh, this is somebody who's not driving at their full capacity because, you know, they swerved in the lane or they, you know, jerked around? You know what I mean?

Like did you see anything like that that made you think the driving ability specifically was impaired?

A. No.

R. 15 at 13:16–25. The driving pattern thus does not fit into either of the two prongs of the "mission" enumerated by *Rodriguez*.

The out-of-circuit District Court cases Reisner cites do not alter the analysis. *See* Opening Br. at 19. In both cited cases, the driving behavior at issue was worlds away from Pfalzgraf's, lending suspicions not present here. In *Mathes*, the officer observed a car "veer off a roadway and 'onto the shoulder and jerk back into the lane of traffic." *United States v. Mathes*, No. 2:20-cr-154-lpr, 2021 WL 4783303 (E.D. Ark. Oct. 13, 2021). And in *Bastardo-Villanueva*, the defendant was driving a rental vehicle past the return date in the rental agreement, was driving the opposite direction of the drop-off location designated for the vehicle in the rental agreement, and was driving back to Pennsylvania after flying to Houston. *United States v. Bastardo-Villanueva*, 206 F. Supp. 3d 1181, 1186 (M.D. La. 2016). Each of these is a far cry from Pfalzgraf's actions here, which consisted of simply turning around to go the other direction. As the District Court correctly determined, there is "no evidence that Pfalzgraf's turn was sudden or reckless or that he was otherwise driving erratically." R. 32 at 10. There was nothing objectively suspicious about Pfalzgraf's travel route or driving behavior, in contrast to the Arkansas and Louisiana cases on which Reisner relies.

The mission of the traffic stop could not have included investigation of Pfalzgraf's "odd" driving pattern because it did not provide an independent reason to detain him. It was not a "traffic violation" and it gave rise to no "safety concerns." *See Rodriguez*, 575 U.S. at 354; *see also* 4 W. LaFave, SEARCH AND SEIZURE § 9.3(d), p. 543 (6th ed. 2020) (rejecting the assertion that "unrestrained travel plan questioning" is always part of a traffic stop's

mission and instead indicating that "courts must inquire whether, on the facts of the particular case, such questioning is within the traffic stop's mission"). Thus, as a matter of law, it cannot be part of the mission of the stop, which was to address the snow-covered plate only.

A potential jury could have nothing to say on the subject. This is because the stop's "mission" is a question of law. The "mission" is defined by *Rodriguez* as consisting of two prongs and is inextricably tied to the reasonable suspicion that prompted it. *See United States v. Yang*, 39 F.4th 893, 902 (7th Cir. 2022) ("Because Harvath had reasonable suspicion to investigate the individuals for involvement with illegal drugs, the questions fell within the scope of the traffic stop's mission."); *Johnson*, 383 F.3d at 542 (explaining that reasonable suspicion presents a question of law). When the reasonable suspicion justifying a stop dissipates, the stop must end. *United States v. Lopez*, 907 F.3d 472, 478 (7th Cir. 2018). Of what traffic violation was there reasonable suspicion here? A snow-covered license plate. Were there additional safety concerns based on Pfalzgraf's path of travel? No. These are questions for the Court and a jury could not find otherwise.

## B. There is no genuine issue of material fact as to whether Reisner had reasonable suspicion to extend the traffic stop.

Reisner also contends that, even if the mission of the stop consisted of addressing the snow-covered license plate only, there is a genuine issue of material fact as to whether he had reasonable suspicion to extend the stop beyond the time reasonably required to complete the stop's mission. Opening Br. at 21. He argues the District Court impermissibly made credibility determinations and usurped the role of the jury. *Id.* at 24. Again, Reisner's argument misses the mark.

Right off the bat, Reisner's premise is faulty. Again, reasonable suspicion is a question of law. *Johnson*, 383 F.3d at 542. How then could a jury have anything to say about

it? "Determinations of probable cause and reasonable suspicion are normally mixed questions of fact and law, but when 'what happened?' is not at issue, the ultimate resolution of whether probable cause or reasonable suspicion existed is a question of law…" *United States v. Dixon*, 137 F.4th 592, 601 (7th Cir. 2025). There is no dispute about "what happened" in this case. The entirety of the interaction between Pfalzgraf and Reisner is on video. *Scott*, 550 U.S. at 380–81 (explaining that the Court should "view[] the facts in the light depicted by the videotape"). All that is left is for the Court (and not a jury) to determine if the objective facts constitute reasonable suspicion. There is nothing that a jury could do, contrary to the premise of Reisner's appeal.

Reisner asserts that the question of reasonable suspicion may be decided by a jury, citing *Pliska v. City of Stevens Point*, 823 F.1168, 1177 (7th Cir. 1987). Opening Br. at 22. *Pliska* is no longer good law on this point. *Pliska* cites two main cases for this proposition: *Best v. District of Columbia*, 291 U.S. 411, 415 (1934), and *Llaguno v. Mingey*, 763 F.2d 1560, 1565 (7th Cir. 1985) (en banc). The cited portion of *Best* just indicates that a directed verdict should not be granted when the jury could find against the nonmoving party. Not groundbreaking and not particularly relevant to the present issue. And *Llaguno* said that probable cause is a jury issue, a holding that has been explicitly overruled by the Supreme Court. *Ornelas v. United States*, 517 U.S. 690, 695–699 (1996); *see Bell*, 321 F.3d at 640–41 (observing that *Llaguno* "has been superseded by *Graham* and *Ornelas*, which stress that reasonableness is analyzed objectively, and as a matter of law").[7] The legal foundation of Reisner's argument is contrary to established precedent.

---

[7] In the briefing below, Reisner conceded that reasonable suspicion is a question of law and even cited *Ornelas* and *Bell*. R. 26 at 3. He now attempts to argue the opposite position (which, as indicated, is contrary to established Supreme Court authority).

The District Court decided the legal question, and it decided it correctly. It did not make credibility determinations; it found that Reisner's observations did not amount to objective reasonable suspicion. Reisner focuses on two observations, which in his view, the jury could have chosen to accept: (1) that Pfalzgraf exhibited signs of drug use, specifically dilated pupils and dry mouth; and (2) that Pfalzgraf's truck was previously seen at a known drug house.

As to the first, the District Court did not make a determination that Reisner was not credible in saying that he thought Pfalzgraf's pupils were dilated or he had dry mouth. Rather, it concluded that "Reisner's conclusory assertion that Pfalzgraf seemed to have a dry mouth and dilated pupils is not an objective basis for reasonable suspicion." R. 32 at 12–13.

Such a determination was based not on a finding that Reisner was not credible, but upon a review of the relevant case law establishing that an observation about pupil size from an officer with no "information about how drug use would affect pupil size during the stop" was insufficient to establish reasonable suspicion. *Id.* at 14; *see State v. Hogan*, 2015 WI 76, ¶48, 364 Wis. 2d 167, 868 N.W.2d 124. Likewise here, Reisner testified that he was not certified as a drug recognition expert. R. 15 at 30:09–31:02; R. 19-1 at 12:19–13:04. The District Court's conclusion wasn't that Reisner's testimony lacked credibility. It was that it was insufficient as a matter of law.

As to the second observation that Reisner says the jury could accept, the sighting of Pfalzgraf's truck (but not Pfalzgraf) at a known drug house, the District Court again did not disbelieve Reisner's testimony or otherwise find it was not credible. It simply determined that the testimony lacked sufficient detail such that it could form the basis for objective reasonable suspicion. To explain, the bare assertion that Reisner had seen the truck at a drug house (which was mentioned for the first time in Reisner's deposition) lacks any

information regarding when the sighting had taken place, why Reisner thought it was connected to the residence, and at what point Reisner recognized the truck. R. 32 at 10 n.4. Without such information, there is little value to the assertion. Even if true, the bald claim that Pfalzgraf's truck was at a drug house, without more, cannot support reasonable suspicion to extend the stop. *See Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) ("But, a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person.").

Further, Reisner did not mention this assertion in his incident report, and he did not speak to Pfalzgraf about it during the stop. We simply don't know if this was something Reisner considered at the time he pulled Pfalzgraf over or in the course of their interaction. And the determination of reasonable suspicion is based on "the totality of the circumstances *known to the officer at the time of the stop.*" *United States v. Bullock*, 632 F.3d 1004, 1012 (7th Cir. 2011) (emphasis added). Absent such information, the assertion about the truck being seen at a drug house cannot provide reasonable suspicion as a matter of law—no credibility determination required.

Given the evidence in the record, the District Court's analysis was sound. To extend the stop, the law requires that Reisner have reasonable suspicion of criminal activity independent of the covered license plate. Reasonable suspicion means more than curiosity or a mere hunch. *United States v. Chang*, 999 F.3d 1059, 1066 (7th Cir. 2021). A mere hunch is all Reisner had here.

Reisner claims that he had a reasonable suspicion that Pfalzgraf might be on drugs due to (1) Pfalzgraf's purportedly odd driving behavior, (2) Pfalzgraf's explanation for the behavior, (3) what he perceived as dilated pupils, (4) what he perceived as dry mouth, (5) the assertion that he had previously seen Pfalzgraf's truck (but not Pfalzgraf) parked in front of a known drug house at some unknown time in the past, and (6) the fact that Pfalzgraf

seemed irritated after being pulled over. Even added together, these factors do not add up to reasonable suspicion—as a matter of law.

First, the "odd driving behavior" consisted of Pfalzgraf avoiding a parking lot with multiple police cars and then turning to go back the way he came. There are plenty of lawful reasons why Pfalzgraf may have chosen to do this. It would be reasonable to think that the presence of so many police cars in one place would indicate that some type of incident had occurred that would be best avoided. Perhaps the gas station had just been robbed. In any event, changing one's mind about making a stop to buy cigarettes cannot serve as justification to extend a traffic stop—nothing about it gives any hint that illegal activity is occurring. The District Court correctly assessed the relevance of this consideration in a potential reasonable suspicion calculus: "Viewed objectively, Pfalzgraf's 'random driving' was nothing more than a driver using side streets to change direction from south to north." R. 32 at 9.

Second, Pfalzgraf's explanation of his driving pattern likewise does not raise a reasonable suspicion of illegal activity. His explanation was consistent with what Reisner saw—Pfalzgraf was avoiding the gas station due to the large police presence there. Seeking to avoid a police interaction is not suspicious but rather is Pfalzgraf's right. *United States v. Brewer*, 561 F.3d 676, 678 (7th Cir. 2009) (citing *United States v. Drayton*, 536 U.S. 194, 200 (2002)) (explaining that a person not seized by officers "can turn on his heels and walk away"). Had Pfalzgraf engaged in "headlong flight" in a high crime area, this may be a different case. *See Illinois v. Wardlow*, 528 U.S. 119, 124–125 (2000). Had Pfalzgraf not been able to explain why he was in Rusk County, this may be a different case. *See Cole*, 21 F.4th at 432. But when Pfalzgraf simply chose not to enter a parking lot full of police cars, the reasonable suspicion calculus is not altered.

Third and fourth, Reisner's observations regarding Pfalzgraf's physical characteristics—pupil dilation and dry mouth—are similarly unhelpful as a basis for reasonable suspicion. As noted above, Reisner is not a drug recognition expert. That an officer has "definitive information…on how drug use might affect pupil size" matters. *Hogan*, 364 Wis. 2d 167, ¶48. Reisner admittedly had none here. R. 15 at 30:09–31:02; R. 19-1 at 12:19–13:04. Also, the entire interaction took place at night, so it makes sense that a person would have dilated pupils whether they were under the influence of a substance or not.

Fifth, as explained above, the assertion that Pfalzgraf's truck was seen at a drug house at some unknown time in the past is not useful in establishing reasonable suspicion without details that are notably absent from the record here. But it should also be noted that even if more detail were present, it would not necessarily tip the balance. Even if a person is in close proximity to illegal activity, individualized suspicion is still required to detain that person. *Ybarra*, 444 U.S. at 91; *United States v. Bohman*, 683 F.3d 861, 865 (7th Cir. 2012).

Sixth and finally, Pfalzgraf's irritation at being pulled over is not suspicious. No one likes being pulled over. And Pfalzgraf was clear with Reisner from the beginning that he did not wish to have an interaction with police (which is of course his right). *See Brewer*, 561 F.3d at 678. As Judge Posner once forcefully explained, such subjective feelings do not create objective suspicion:

> Whether you stand still or move, drive above, below, or at the speed limit, you will be described by the police as acting suspiciously should they wish to stop or arrest you. Such subjective, promiscuous appeals to an ineffable intuition should not be credited.

*United States v. Broomfield*, 417 F.3d 654, 655 (7th Cir. 2005).

Thus, Reisner forced Pfalzgraf into an interaction he was lawfully avoiding when there was nothing to suggest that Pfalzgraf drove in a manner indicating impairment. R. 15 at 10:11–14, 12:5–13, 14:5–8. Such a scenario would annoy many people.

The District Court correctly determined that Reisner lacked reasonable suspicion to extend the stop to follow his hunch that Pfalzgraf was under the influence. In arriving at this conclusion, the District Court followed the correct summary judgment methodology and did not make any impermissible credibility determinations. If the Court reaches the issue —i.e., if it is not waived —this Court should affirm the District Court.

### III. THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT ON THE UNLAWFUL FRISK CLAIM BECAUSE REISNER PROVIDED NO ARTICULABLE FACTS SPECIFIC TO PFALZGRAF TO INDICATE REASONABLE SUSPICION THAT PFALZGRAF WAS ARMED AND DANGEROUS.

Again, Pfalzgraf contends that Reisner waived the argument that disputed issues of fact preclude summary judgment on the unlawful frisk claim. But even if he did not, Reisner's claims on appeal are unpersuasive.

Generally, a law enforcement officer cannot perform a search without a warrant. *Arizona v. Gant*, 556 U.S. 332, 338 (2009). There are of course exceptions to this general rule, including, as relevant here, a *Terry* frisk. *See Terry*, 392 U.S. 1. Pursuant to *Terry*, when a law enforcement officer has a reason to believe that a person is engaged in criminal activity and is armed and dangerous, the officer may frisk the outer clothing of the person to check for weapons. *Doornbos v. City of Chicago*, 868 F.3d 572, 581 (7th Cir. 2017); *Arizona v. Johnson*, 555 U.S. 323, 327 (2009). Such a frisk is constitutionally permissible if two conditions are met. *Johnson*, 555 U.S. at 326. "First, the investigatory stop must be lawful," i.e., there must be reasonable suspicion of criminal activity. *Id.* "Second, to proceed from a stop to a frisk, the police officer must reasonably suspect that the person stopped is armed and dangerous." *Id.* at 326–27.

And the suspicion must be individualized, not general. *Doornbos*, 868 F.3d at 582 (quoting *Maryland v. Buie*, 494 U.S. 325, 334 n.2 (1990)). Such a "specific analysis, requiring the officer to hold a reasonable suspicion that the subject is 'armed and dangerous' as

opposed to being generally suspicious, allows courts to distinguish between legitimate and illegitimate frisks, the latter of which constitute severe intrusions upon individual liberty." *United States v. Williams*, 731 F.3d 678, 686 (7th Cir. 2013). A frisk "should only be allowed when the officer can point to articulable facts that would establish the separate and specific condition that the detainee has a weapon or poses some danger." *Id.*

Reisner himself, subjectively, did not believe Pfalzgraf was dangerous. R. 15 at 32:24–33:2. Whether or not that belief was objectively correct is a question of law. *Bell*, 321 F.3d at 640–41. And yet Reisner now, for the first time, argues this constitutional inquiry should be submitted to the jury.

As with the above argument regarding reasonable suspicion to extend the stop, the argument on reasonable suspicion to conduct a frisk fails to get off the ground. Reasonable suspicion is a question of law. *Ornelas*, 517 U.S. at 699. So again, what could a jury conceivably do here? The answer is nothing. It is unclear from Reisner's briefing what the disputed facts are that would preclude summary judgment on the unlawful frisk claim. Reisner's argument begins with the heading: "Genuine disputes of material fact precluded a finding as a matter of law that Deputy Reisner lacked reasonable suspicion to conduct a protective frisk for weapons." Opening Br. at 25. And the argument ends with the proffered conclusion that a "reasonable jury could look at the facts in the light most favorably to Deputy Reisner and find that [] he had reasonable suspicion to pat down Plaintiff." *Id.* at 32. The problem with this, again, is that reasonable suspicion, when there is no dispute about what happened, is a question of law. To repeat: "Determinations of probable cause and reasonable suspicion are normally mixed questions of fact and law, but when 'what happened?' is not at issue, the ultimate resolution of whether probable cause or reasonable suspicion existed is a question of law…" *Dixon*, 137 F.4th at 601.

Again, the "what happened" is not disputed. The entire interaction was on video. *See Scott*, 550 U.S. at 380–81. It is unclear what, if any, disputed facts there would be for a jury to decide. Rather, what Reisner seems to be asking for is the jury to look at the same facts as the District Court and arrive at a different legal conclusion—that reasonable suspicion existed.

Reisner contends that the District Court rejected or discounted his asserted justifications or otherwise made impermissible credibility determinations on summary judgment. But the District Court's work in deciding the motion for summary judgment did not require any credibility determinations. Even accepting all of Reisner's concerns at face value, they do not add up to reasonable suspicion that Pfalzgraf was armed and dangerous.

To begin, Reisner himself apparently did not see Pfalzgraf as a threat. Reisner's claim that he had reasonable suspicion that Pfalzgraf was armed and dangerous is undercut by his own statement at his deposition that "[t]here wasn't anything about the current situation that made me fear that Mr. Pfalzgraf was going to present any sort of immediate threat to me." R. 15 at 32:24–33:2.

The record provides no reason to discount Reisner's contemporaneous assessment of the situation in favor of a post hoc rationalization for his conduct. Reisner's own assessment of the situation is certainly a relevant consideration in the totality of the circumstances. *See United States v. Marin*, 761 F.2d 426, 432 (7th Cir. 1985) (explaining that "when observing activity of a person suspected of criminal activity, Government agents are entitled to reasonably rely upon their special knowledge and expertise to assess probabilities and draw inferences"); *see also State v. Kyles*, 2004 WI 15, ¶37, 269 Wis. 2d 1, 675 N.W.2d 449 (concluding that "although an officer's perception is not determinative in determining the reasonableness of the frisk, it may be of some assistance to a court in weighing the totality of the factors").

And indeed, the totality of the circumstances reveals no particularized facts that would lead Reisner to reasonably suspect that Pfalzgraf was both armed *and* dangerous. As the use of "and" indicates, armed and dangerous are two separate requirements that must be met to justify a *Terry* frisk. *United States v. Leo*, 792 F.3d 742, 748 (7th Cir. 2015) (explaining that law enforcement may "frisk a detained person for weapons if the officers have an articulable suspicion that the person is both armed and a danger to the safety or officers or others"). Both are required, and neither is present.

Even searching the record for an after-the-fact justification for Reisner's actions (despite his own initial assessment of the situation), there are no particularized facts indicating that Pfalzgraf was armed. The only asserted facts that allegedly speak to a potential suspicion that Pfalzgraf was armed are (1) Reisner's hunch that Pfalzgraf was under the influence of drugs, (2) that Pfalzgraf put his hands in his pockets, and (3) Reisner's experience that many residents of Rusk County carry weapons.

As to Reisner's first concern that Pfalzgraf was potentially under the influence, this is but one factor among many that informs a reasonable suspicion determination. And courts have emphasized that more than just a belief that the individual is in possession of drugs is necessary to conduct a frisk. *See, e.g.*, *United States v. Colbert*, 54 F.4th 521, 530 (7th Cir. 2022) (determining that the odor of marijuana combined with the defendant's refusal to immediately pull over, reluctance to leave the vehicle, and nervous behavior, contributed to the officer's reasonable suspicion that the defendant was armed and dangerous). The cases Reisner cites do not say otherwise. *Martin v. Forest County*, 677 F. Supp. 3d 853 (E.D. Wis. 2023), is a case about drug *trafficking*, not drug *possession*. This is a significant distinction. Although there is a "well-established" relationship between drug trafficking and guns, the *Martin* court had nothing to say about simple possession. *Id.* at 865–66. Reisner points to nothing to indicate that Pfalzgraf had any involvement in drug trafficking. And

*United States v. Lee*, No. 07-CR-167, 2008 WL 150597, at *2–3 (E.D. Wis. 2008), provides nothing that Pfalzgraf does not already concede: that potential intoxication is but one factor of many that may inform a reasonable suspicion determination.

The fact that Pfalzgraf placed his hands in his pockets likewise does not provide reasonable suspicion to justify a frisk. This Court has previously determined that "the simple fact that one's hands are in one's pockets…is of little value." *Williams*, 731 F.3d at 689. This is because it is a common posture for people to stand, whether they are armed or not: "If one were to drive down any given street, it is likely that an uncountable number of citizens would have their hands in their pockets.…Certain people prefer their hands to be pocketed—and why not? It can often be more comfortable." *Id.* Additionally, the events giving rise to this case occurred in January, after midnight, in northern Wisconsin. One would be expected to put one's hands in their pockets simply to warm them up. *See Doornbos*, 868 F.3d at 582 (discounting the fact that the plaintiff was wearing a coat with deep pockets in Chicago in February to justify a frisk). This Court's precedent in the form of *Williams* and *Doornbos* thus dictates that this fact does not tip the balance.

Finally, Reisner's experience that residents of Rusk County often carry weapons is a generalized suspicion that is not in any way specific to Pfalzgraf. Such a generalized suspicion cannot form the basis for reasonable suspicion that a particular person is armed and dangerous. *See Ybarra*, 444 U.S. at 90–94. Giving credence to Reisner's argument on this point would allow any resident of Rusk County who is pulled over to be frisked. *See Rodriguez-Escalera*, 884 F.3d at 671 (explaining that something that could describe "a very large category of presumably innocent travelers" cannot for the basis of reasonable suspicion). In sum, without any particularized facts to demonstrate reasonable suspicion that Pfalzgraf was armed, Reisner's claim must fail.

But if the Court reaches the "dangerous" inquiry, there are likewise no facts to support reasonable suspicion that Pfalzgraf was dangerous. Reisner posits the following: (1) the traffic stop took place in the middle of the night and in a remote, rural area; (2) Pfalzgraf is a large person; (3) Pfalzgraf was agitated; and (4) Pfalzgraf gave a "confusing" explanation of where he was driving. Opening Br. at 28–31. Even taken together, these facts do not rise to the level of reasonable suspicion that Pfalzgraf was dangerous.

The time and location of the traffic stop is a factor among many that can be considered in a determination of whether a frisk is justified. *United States v. Tinnie*, 629 F.3d 749, 753 (7th Cir. 2011). But it is not sufficient, on its own, to provide justification for a frisk. *Williams*, 731 F.3d at 688 (rejecting an assertion of reasonable suspicion where the facts "could support a search of practically anyone who happens to be near a high-crime area at night"). Reisner does not cite any case indicating that Pfalzgraf's physical size even enters the equation. And in any event, Reisner had backup in the form of another officer who had arrived on the scene. Presumably, two trained police officers could handle Pfalzgraf were he to attempt physical resistance (which he didn't).

True, Pfalzgraf was unhappy about getting pulled over. But most people would be. "Most people, when confronted by a police officer, are likely to act nervous, avoid eye contact, and even potentially shift their bodies as if to move away from the area, thus making such behaviors of very little import to a reasonable suspicion determination." *Williams*, 731 F.3d at 687.

Finally, Pfalzgraf's explanation of his driving pattern says nothing about whether he was dangerous. Reisner asserts that Pfalzgraf's "confusing and contradictory explanation of where he was driving provided even more suspicion that [he] was engaged in illegal activity." Opening Br. at 30. Such an argument conflates reasonable suspicion of illegal activity with reasonable suspicion that a person is armed and dangerous. It is the latter that

is required to justify a frisk. *Doornbos*, 868 F.3d at 581. Pfalzgraf's driving pattern, and his explanation for it, contribute nothing to any suspicion that he was armed and dangerous.

The factors Reisner presents as supporting a reasonable suspicion that Pfalzgraf was armed and dangerous thus add up to nothing. It is "impossible for a combination of wholly innocent factors to combine into a suspicious conglomeration unless there are concrete reasons for such an interpretation." *United States v. Beck*, 140 F.3d 1129, 1137 (8th Cir. 1998), (quoting *United States v. Wood*, 106 F.3d 942, 948 (10th Cir. 1997) (in turn quoting *Karnes v. Skrutski*, 62 F.3d 485, 496 (3rd Cir. 1995) (abrogated on other grounds)); *see United States v. Bowman*, 884 F.3d 200, 219 (4th Cir. 2018) (same quote, different source) and *United States v. Patterson*, 340 F.3d 368, 371 (6th Cir. 2003) (same quote, different source); *accord Jones v. Clark*, 630 F.3d 677, 683 (7th Cir. 2011) ("The fatal flaw in [the officers'] argument [that there was reasonable suspicion] is that they cannot point to a single circumstance that could have led them to believe that Jones was engaged in criminal activity.").

A lack of reasonable suspicion that Pfalzgraf was *either* armed *or* dangerous is enough to sink his appeal on this claim. Neither is present.

Pfalzgraf does not dispute that traffic stops may be dangerous for law enforcement officers. *See Rodriguez*, 575 U.S. at 356. But generalized safety concerns do not give an officer the right to invade a person's privacy with a protective frisk unless particularized suspicion is present that the person is both armed and dangerous. The facts here fall short as a matter of law, and the District Court was correct to grant summary judgment to Pfalzgraf on his unlawful frisk claim. If this Court determines that this argument is not waived, it should affirm the District Court.

## IV. THE DISTRICT COURT CORRECTLY DETERMINED AS A MATTER OF LAW THAT REISNER IS NOT ENTITLED TO QUALIFIED IMMUNITY.

Again, Reisner's assertion that he is entitled to a trial on qualified immunity is waived. But his new insistence on a liability jury trial undermines his argument on the merits as well. Reisner argues on appeal that a jury could conclude he's entitled to qualified immunity. Opening Br. at 34, 35. This argument is a non-starter. "Whether a government official is entitled to qualified immunity is a legal question for resolution by the court, not a jury." *Purtell*, 527 F.3d at 621. The relief he seeks (a jury trial on qualified immunity) is simply unavailable.

Qualified immunity protects government officials from liability for civil damages where their conduct does not violate a clearly established statutory or constitutional right. *Gupta v. Melloh*, 19 F.4th 990, 1000 (7th Cir. 2021). "Qualified immunity under § 1983 extends to police officers unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *Id.* (quoted source omitted).

Reisner raises neither prong on appeal. He does not argue that he didn't violate Pfalzgraf's Fourth Amendment rights; instead, he argues that a jury could find he did not. Nor does he argue that Pfalzgraf's Fourth Amendment rights were not clearly established. When qualified immunity applies, the claim is done. "The entitlement is an *immunity from suit* rather than a mere defense to liability[.]" *Mitchell*, 472 U.S. at 526. Thus, qualified immunity is analyzed in the "light most favorable to the party asserting the injury." *Scott*, 550 U.S. at 377. In other words, cases are not dismissed because a deputy would be entitled to qualified immunity if the facts were viewed in the light most favorable *to the deputy*.

Reisner mistakenly misses the black-letter law. Instead, he argues that the District Court "relied on its view of the facts, weighing the same disputed facts and making the

same credibility determinations it performed in finding that Deputy Reisner lacked reasonable suspicion." Opening Br. at 33.

But again, the District Court did nothing of the sort. This argument is simply a retread of the arguments presented above. Reisner's qualified immunity analysis raises nothing new. It rehashes the same alleged "credibility determinations." In arguing that the District Court made impermissible credibility determinations when it ruled that qualified immunity did not protect Reisner's actions, Reisner does not identify any additional alleged credibility determinations independent from his argument on the unlawful extension and unlawful frisk claims. And it rehashes the same reasonable suspicion analysis without an explanation of how the qualified immunity standard differs.

Reisner attempts to circumvent the maxim that qualified immunity is a question of law with citation to two unpublished District Court cases where qualified immunity was denied based on disputed material facts. Opening Br. at 34. Putting aside the fact that Reisner was the party in the District Court *seeking* qualified immunity, not arguing against it, these cases have no impact here. They involve case-specific determinations that disputed facts existed on the summary judgment records in those cases, nothing more. *See Savory v. Cannon*, No. 23-cv-1184, 2024 WL 4786167, at *9. (C.D. Ill. Oct. 3, 2024); *Rosario v. City of Chicago*, No. 11 C 456, 2012 WL 1319806, at *5 (N.D. Ill. Apr. 17, 2012). There is no larger principle that can be extrapolated to apply here. Here, in contrast, there are no disputed facts, as established above.

The District Court applied the correct methodology in determining that Reisner did not have "even arguable reasonable suspicion" to extend the traffic stop. R. 32 at 14. And similarly, it applied the same "arguable reasonable suspicion" standard in determining that there was not even arguable reasonable suspicion to frisk Pfalzgraf, stating that this "is not a close case in which a reasonable officer could have arguable reasonable suspicion

that Pfalzgraf was armed and dangerous." R. 32 at 16. The District Court's analysis was correct. Reisner does not and cannot claim that he was not on notice that his actions were unconstitutional. Instead, he conjures vague factual disputes that have no connection to the legal question the District Court decided.

Because Reisner does not seek dismissal of the case, he is not really asserting qualified immunity at all, nor is he asking this Court to make any determination regarding "clearly established law." He is not saying that the facts, in the "light most favorable to the party asserting the injury," *Scott*, 550 U.S. at 377, establish that qualified immunity applies. So what is he saying? Reisner appears to be asking for a trial to determine whether he is immune from suit in the first place. But he did not lay the groundwork for this in the District Court. And the "credibility determinations" upon which his argument rests are not credibility determinations at all, as analyzed above.

At most, the argument on qualified immunity is a rehashing of Reisner's previous arguments. And again, these rehashed arguments are waived and there are no disputed facts. Because Reisner is not asking the Court to make any determination as to whether qualified immunity applies, it need not go through a qualified immunity analysis and it should not analyze reasonable suspicion through a qualified immunity lens. Because Reisner's argument rests on factual disputes that do not exist, this Court should affirm.

## CONCLUSION

For the reasons stated, this Court should affirm the judgment below.


Respectfully submitted,

Dated: 22 October 2025,

STRANG BRADLEY, LLC
Attorneys for Plaintiff

/s/Jacob M. Stroup
John H. Bradley
   Wisconsin Bar No. 1053124
R. Rick Resch
   Wisconsin Bar No. 1117722
Jacob M. Stroup
   Wisconsin Bar No. 1089159
STRANG BRADLEY, LLC
613 Williamson St., Ste. 204
Madison, WI 53703
(608) 535-1550
John@StrangBradley.com
Rick@StrangBradley.com
Jacob@StrangBradley.com

**CERTIFICATE OF COMPLIANCE WITH CIR. R. 32(c)**

The undersigned, counsel of record for the Plaintiff-Appellee furnishes the following in compliance with Circuit Rule 32(c):

I hereby certify that this Brief conforms to the rules contained in Circuit Rule 32(c) for a brief produced with a proportionally spaced serif font. The length of the brief is 13,373 words.

Dated this 22nd day of October 2025.

STRANG BRADLEY, LLC
Attorneys for Plaintiff-Appellee

/s/ John H. Bradley
John H. Bradley
  Wisconsin Bar No. 1053124
R. Rick Resch
  Wisconsin Bar No. 1117722
Jacob M. Stroup
  Wisconsin Bar No. 1089159
STRANG BRADLEY, LLC
613 Williamson St., Ste. 204
Madison, WI 53703
(608) 535-1550
John@StrangBradley.com
Rick@StrangBradley.com
Jacob@StrangBradley.com

**CERTIFICATE OF SERVICE**

The undersigned, counsel of record for the Plaintiff-Appellee hereby certifies that on October 22, 2025, an electronic copy of the Appellee's Brief was served on counsel for Defendants-Appellants.

Dated this 22nd day of October 2025.

STRANG BRADLEY, LLC
Attorneys for Plaintiff-Appellee

/s/ John H. Bradley
John H. Bradley
  Wisconsin Bar No. 1053124
R. Rick Resch
  Wisconsin Bar No. 1117722
Jacob M. Stroup
  Wisconsin Bar No. 1089159
STRANG BRADLEY, LLC
613 Williamson St., Ste. 204
Madison, WI 53703
(608) 535-1550
John@StrangBradley.com
Rick@StrangBradley.com
Jacob@StrangBradley.com